Electronically Filed
Supreme Court
SCAP-13-0005234
27-FEB-2017
08:01 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

RUSSELL L. HUNGATE,
Plaintiff-Appellant,

vs.

THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION,
DAVID B. ROSEN, and DEUTSCHE BANK NATIONAL TRUST COMPANY,
Defendants-Appellees.

_____

SCAP-13-0005234

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-13-0005234; CAAP-14-0000772; CIVIL NO. 13-1-2146;
CIVIL NO. 13-1-2146)

FEBRUARY 27, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

This case concerns a non-judicial foreclosure

conducted pursuant to Hawai'i Revised Statutes (HRS) § 667 Part I

(Supp. 2008), which was repealed by the state legislature on June 28, 2012 by Act 182. Plaintiff-Appellant Russell L. Hungate (Hungate) appeals the Circuit Court of the First Circuit's (circuit court) order granting Defendants-Appellees David B. Rosen's and his law office's (collectively, Rosen) motion to dismiss the complaint. Hungate also appeals the circuit court's order granting Defendant-Appellee Deutsche Bank National Trust Company's (Deutsche Bank) motion to dismiss the first amended complaint.[1]

On appeal, we consider whether the circuit court wrongly dismissed Hungate's claims alleging Deutsche Bank and Rosen violated statutory, contractual, and common law duties, and committed unfair or deceptive acts or practices (UDAP). We conclude the circuit court erred in dismissing the majority of Hungate's claims. Accordingly, we vacate in part the circuit court's November 5, 2013 order granting Rosen's motion to dismiss, vacate in part the circuit court's April 8, 2014 order granting Deutsche Bank's motion to dismiss, and remand for further proceedings.

---

[1] On appeal, Hungate's case was split into two appellate case numbers. SCAP-13-0005234 is Hungate's appeal of the circuit court's order dismissing the original complaint. SCAP-14-0000772 is Hungate's appeal of the circuit court's order dismissing the first amended complaint, which Hungate filed after the circuit court dismissed his original complaint. Hungate's cases were consolidated by this court into SCAP-13-0005234.

## I.    Background

Because the circuit court dismissed Hungate's August 6, 2013 complaint and his first amended complaint, filed December 19, 2013, pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 12(b)(6) (2000), we take the factual allegations from the complaints as true for purposes of this appeal.  See Young v. Allstate Ins. Co., 119 Hawaiʻi 403, 406, 198 P.3d 666, 669 (2008).  Hungate's initial complaint and first amended complaint included the following factual allegations.

### A.    Factual Allegations

Hungate secured a mortgage loan from IndyMac Bank, F.S.B. (IndyMac), in the amount of $324,090 to purchase real property in Kalāheo, Kauaʻi in 2007.[2]  Hungate executed the mortgage on February 10, 2007 and recorded it in the Bureau of Conveyances on February 16, 2007.  In March 2007, IndyMac assigned its interest in Hungate's mortgage to one of its subsidiaries, which then assigned its interest to Deutsche Bank.

To address the possibility of foreclosure, the mortgage contract included a power of sale clause that allowed the property to be sold through a non-judicial foreclosure.  The power of sale clause, found in section 22 of Hungate's mortgage,

---

[2]    At the proceeding on Rosen's motion to dismiss, Hungate's counsel represented that the property was a vacant 10,000 square foot lot with ocean views.  Hungate planned to build a "dream home" on the property but he did not proceed with his plan after he experienced financial difficulties.

reads in relevant part as follows: "Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale."

On August 5, 2008, IndyMac notified Hungate that his loan was in default because he had not made the required payments. On January 14, 2009, an individual acting on behalf of IndyMac[3] executed a notice of mortgagee's intention to foreclose under power of sale. On March 16, 2009, the notice of intention of foreclosure was properly filed at the Bureau of Conveyances by IndyMac on behalf of Deutsche Bank as the holder of the note. The notice offered Hungate's property for sale with a quitclaim deed and made no warranties.

Deutsche Bank retained Rosen, a Hawaiʻi-licensed attorney, to conduct the foreclosure of Hungate's property. Deutsche Bank followed the non-judicial foreclosure process set forth in HRS § 667 Part I.[4]

To begin the non-judicial foreclosure process, Rosen published a notice of sale in The Garden Island, a newspaper of general circulation, as required by former HRS § 667-5(a)(1) (Supp. 2008). Under HRS § 667-5(a)(1), the attorney must

---

[3] The record is unclear as to whether the individual was employed by IndyMac or another entity.

[4] An alternative non-judicial foreclosure process with additional statutory requirements, codified in HRS § 667 Part II (Supp. 2008), was also available.

publish the notice of the mortgagee's intention to foreclose "once in each of three successive weeks . . . in a newspaper having a general circulation in the county in which the mortgaged property lies[.]"  In compliance with this requirement, Rosen published a notice of sale once a week for three weeks on March 20, March 27, and April 3, 2009.  The notice of sale stated a sale date of April 17, 2009.[5]

Rosen then postponed the sale a total of four times in 2009: from April 17 to May 15, from May 15 to June 12, from June 12 to July 17, and from July 17 to August 14.  These dates were never published.  Whether the postponement was publicly announced to the bidders who attended each sale date, as required by HRS § 667-5(d), is contested.

At the August 14, 2009 sale, Deutsche Bank was the sole bidder with a winning credit bid of approximately $161,250.  This amount was substantially below the market value of Hungate's property.  A "Mortgagee's Grant Deed Pursuant to Power of Sale" was recorded at the Bureau of Conveyances on October 30, 2009 by Deutsche Bank.

B.  **Procedural History**

On August 6, 2013, Hungate filed his initial complaint against Rosen and Deutsche Bank.  Hungate contended that

_____

[5]     The notice states, in relevant part, that the mortgagee "gives notice that Mortgagee will hold a sale by public auction on April 17, 2009 at 12:00 noon At [sic] the flagpole fronting the fifth circuit court building."

Deutsche Bank and Rosen wrongfully conducted the foreclosure of Hungate's property by (1) advertising a proposed sale date 28 days after the date of the first published notice, when HRS § 667-7[6] required that the sale date be at least 29 days after the first published notice; (2) failing to publicize the postponed sale date, in violation of the mortgage's power of sale clause; and (3) breaching their common law duty to secure the best possible price for the property.  Hungate also argued that Deutsche Bank and Rosen violated HRS § 480-2[7] because their actions constituted unfair and deceptive trade acts or practices and resulted in unfair methods of competition.

Rosen filed a motion to dismiss under HRCP Rule 12(b)(6).  Rosen argued (1) the initial sale date was scheduled after the expiration of four weeks, when including the date first advertised, and thus he complied with HRS § 667-7; (2)

---

[6]     HRS § 667-7 (Supp. 2008) states as follows:

     (a)    The notice of intention of foreclosure shall contain:
         (1)   A description of the mortgaged property; and
         (2)   A statement of the time and place proposed for the sale thereof at any time after the expiration of four weeks from the date when first advertised.

     (b)    The affidavit described under section 667-5 may lawfully be made by any person duly authorized to act for the mortgagee, and in such capacity conducting the foreclosure.

[7]     HRS § 480-2(a) (2008) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

6

publication of a sale postponement notice was not required by HRS § 667-5(d)[8] or the mortgage;[9] and (3) Rosen is not liable to Hungate because Rosen did not owe a duty of care to Hungate, a non-client.

On November 5, 2013, the circuit court granted Rosen's motion to dismiss.[10] The court ruled that (1) Rosen complied with HRS §§ 667-5 and 667-7 as a matter of law; (2) HRS § 667-5(d) and the power of sale clause of the mortgage did not require publication of the postponement of the non-judicial foreclosure sale; (3) Hungate lacked standing to assert claims under HRS chapter 480; and (4) Hungate's common law claims were foreclosed because Rosen did not owe a duty to Hungate.

On December 19, 2013, Hungate filed his first amended complaint against Rosen and Deutsche Bank. The claims were nearly identical to those alleged in the initial complaint.[11]

---

[8] HRS § 667-5(d)(Supp. 2008) states in relevant part as follows: "Any sale, of which notice has been given . . . may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf."

[9] Rosen noted that the notice of mortgagee's intention to foreclose under power of sale stated that "[t]his sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf." (Emphasis omitted).

[10] The Honorable Rhonda A. Nishimura presided.

[11] In addition to the claims raised in the initial complaint, Hungate alleged that Deutsche Bank's practice of granting quitclaim deeds, rather than limited warranty deeds, was an unfair and deceptive trade practice. This claim is not an issue before the court.

Deutsche Bank filed a motion to dismiss the first amended complaint, making arguments similar to those presented by Rosen.

On April 8, 2014, the circuit court granted in part[12] Deutsche Bank's motion to dismiss Hungate's first amended complaint. As with its prior dismissal of Hungate's August 6, 2013 complaint, the court ruled that (1) Deutsche Bank complied with the notice requirement under HRS §§ 667-5 and 667-7 as a matter of law, and (2) HRS § 667-5(d) and the power of sale clause did not require that postponements of sale be published.

After appealing to the Intermediate Court of Appeals, the parties filed applications for transfer that were subsequently granted by this court.

## II.  Standards of Review

### A.  Motion to Dismiss

The circuit court's grant of a motion to dismiss is reviewed de novo. Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008), as amended (Jan. 25, 2008). Further, the appellate court must accept the allegations made in the complaint as true and "view them in the

---

[12] The circuit court stayed Hungate's claim regarding Deutsche Bank's use of quitclaim deeds pending the appeals in Lima v. Deutsche Bank National Trust Co., No. 13-16091 (9th Cir. filed May 30, 2013); Gibo v. United States Bank National Ass'n, No. 13-16092 (9th Cir. filed May 30, 2013); and Bald v. Wells Fargo Bank, N.A., No. 13-16622 (9th Cir. filed Aug. 12, 2013), which raised the same or similar issues.

light most favorable to the plaintiff[s]; dismissal is proper only if it 'appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] that would entitle [them] to relief.'" Wong v. Cayetano, 111 Hawaiʻi 462, 476, 143 P.3d 1, 15 (2006)(citations omitted). "However, in weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged." Pavsek v. Sandvold, 127 Hawaiʻi 390, 403, 279 P.3d 55, 68 (App. 2012) (citation omitted).

## B.    Statutory Interpretation

Statutory interpretation is reviewable de novo. Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007). When construing statutes, the court is governed by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

9

Id. at 193-94, 159 P.3d at 152-53 (citations omitted).

C.    **Interpretation of Contracts**

"[T]he construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013)(citation omitted).

## III. Discussion

Taking the facts alleged in Hungate's complaints as true, the circuit court improperly dismissed Hungate's initial complaint and first amended complaint.  In reaching this conclusion, we assess Hungate's claims against Deutsche Bank and Rosen, respectively.

In Part A, we hold the circuit court erred in dismissing the majority of Hungate's claims against Deutsche Bank regarding the alleged HRS chapter 667 Part I violations. Additionally, we conclude the mortgage's power of sale clause required Deutsche Bank to publish all postponements of the foreclosure sale.  Regarding Hungate's HRS chapter 667 Part I claims against Rosen, we conclude that the statute required Rosen (1) to give proper notice of the sale date under former HRS § 667-7 and (2) to give notice of the postponements of the sale in accordance with the mortgage's power of sale clause per former HRS § 667-5.  However, we hold that those statutory

provisions do not create a private right of action against the attorney of a foreclosing mortgagee. We conclude Hungate does not have a cause of action against Rosen under former HRS § 667-5 and his claims against Rosen based upon the mortgage's power of sale clause cannot stand.

In Part B, we determine that Deutsche Bank had a common law duty to Hungate to use reasonable means to obtain the best price for Hungate's property. In Part C we hold that the circuit court erred in dismissing Hungate's unfair or deceptive acts or practices claim against Deutsche Bank, but properly dismissed Hungate's UDAP claim against Rosen.

A. **The Circuit Court Erred in Dismissing the Majority of Hungate's Claims Alleging HRS Chapter 667 Part I Violations against Deutsche Bank**

Hungate alleges that Deutsche Bank and Rosen improperly conducted the foreclosure sale of Hungate's property. Specifically, Hungate contends Rosen and Deutsche Bank: (1) advertised a foreclosure date earlier than permitted under HRS § 667 Part I; (2) failed to publish the notices of postponements of the sale as was required by the power of sale clause; and (3) improperly permitted a non-attorney to prepare and sign the notice of sale.

We hold that the circuit court erred in dismissing Hungate's complaints against Deutsche Bank on the basis of the first two allegations. As to the third allegation, former HRS

11

§ 667-5 does not require a Hawaiʻi-licensed attorney to prepare and sign a notice of sale, and we affirm in part the circuit court's April 8, 2014 order dismissing Hungate's first amended complaint.

Regarding the allegations against Rosen, we conclude that Hungate does not have a cause of action against Rosen for violating statutory requirements under HRS chapter 667, or for his failure to adhere to the requirements of the mortgage's power of sale clause.

1. **HRS § 1-29 Governs the Scheduling of a Foreclosure Sale Under Former HRS § 667 Part I[13]**

Former HRS § 667-7(a)(2) required that "[t]he notice of intention of foreclosure shall contain: . . . A statement of the time and place proposed for the sale [of the mortgaged property] at any time <u>after</u> the expiration of four weeks from the date when first advertised."  (Emphasis added).  Thus,

_____

[13] The events at issue here occurred between 2007 and 2009. In the wake of the mortgage crisis, the legislature formed a Mortgage Foreclosure Task Force in 2010. See 2010 Haw. Sess. Laws, Act 162, § 2, at 375. The Task Force recommended extensive changes to the Hawaiʻi foreclosure statute in reports to the legislature in December 2010 and December 2011, and many of those changes were subsequently enacted by the legislature in the 2011 and 2012 legislative sessions. See generally Final Report of the Mortgage Foreclosure Task Force to the Legislature for the Regular Session of 2012 (December 2011); see also 2011 Haw. Sess. Laws, Act 48 at 84; 2012 Haw. Sess. Laws, Act 182, at 630.  Among other things, those revisions imposed UDAP liability on foreclosing mortgagees for a series of specific violations of the statutory procedures which now govern nonjudicial foreclosure.  HRS § 667-60 (2016).

whether the advertised sale date on April 17, 2009 was "after the expiration of four weeks" is the crux of this issue.

Hungate contends that HRS § 1-29 is the proper method to calculate whether Deutsche Bank and Rosen complied with HRS § 667-7. HRS § 1-29 (2009) provides that time periods are calculated "by excluding the first day and including the last[.]" Under Hungate's analysis, Deutsche Bank and Rosen advertised a foreclosure sale date that was exactly 28 days from the date the notice was published, and therefore the sale was not scheduled "after the expiration of four weeks."

Deutsche Bank and Rosen argue that we should apply the time computation rule set forth in Silva v. Lopez, which required that we "include the day of the first publication and exclude the day the act is advertised to be done." Silva, 5 Haw. 262, 270 (Haw. Kingdom 1884). The time computation rule of Silva indicates that Deutsche Bank and Rosen advertised a sale date in compliance with the four-week requirement.

We hold that HRS § 1-29 is the appropriate computation rule. In 1923, the Hawaiʻi legislature passed Act 3, the predecessor to HRS § 1-29, which set forth a time computation rule that is substantially the same as HRS § 1-29. 1923 Haw. Sess. Laws Act 3, § 1 at 2. To explain the necessity of Act 3, the chair of the House Judiciary Committee noted that "under our existing statutes no definition is given nor method supplied in

13

the computation of time for the performance or completion of an Act under contract or legal requirement[.]"  H. Stand. Comm. Rep. No. 9, in 1923 House Journal, at 97.  Due to the absence of a time computation provision, he explained that "numerous interpretations [of time computation] based principally on the decisions of other courts and jurisdictions" resulted.  Id. Silva is one such case that used the decisions of other courts to determine a time computation rule.  Specifically, the Silva court cited a New Hampshire case in deciding that the day an act occurred was included in computing time.  Silva, 5 Haw. at 262. By passing Act 3, which became HRS § 1-29, the Hawaiʻi legislature outlined the procedure by which we now calculate time.  Thus, HRS § 1-29 sets forth the computation rule to be used when calculating the scheduling of foreclosure sales pursuant to HRS § 667 Part I.

HRS § 1-29 mandates that the earliest date for the sale of Hungate's property was April 18, 2009, and thus Deutsche Bank did not give the requisite amount of notice.  HRS § 1-29 states that "[t]he time in which any act provided by law is to be done is computed by excluding the first day and including the last[.]"  Combined with the "after the expiration of four weeks" language from HRS § 667-7(a)(2), HRS § 1-29 requires that March 20, 2009, the date Deutsche Bank and Rosen first published the notice of sale, be excluded from the notice calculation as it

was "the first day."  Counting four weeks—28 days—from March 21, 2009, results in the earliest possible sale date falling on April 18, 2009.  Accordingly, the circuit court erred in determining that a sale date of April 17, 2009 complied with the requirements of HRS § 667-7.

### 2. The Power of Sale Clause Required Deutsche Bank to Publish Postponements of the Foreclosure Sale

Hungate argues that Deutsche Bank and Rosen were required to publish all postponements of the April 17, 2009 sale date for two reasons: (1) the original sale date advertised in the notice was one day early and thus notice was not properly given, and (2) the power of sale clause of Hungate's mortgage required publication of postponements of the foreclosure sale.

Deutsche Bank and Rosen contend the power of sale clause cannot require publication of postponements because former HRS § 667-5(d)(Supp. 2008) allows for sales to be postponed "from time to time by public announcement[.]"  This section presupposes, however, that "notice has been given" in accordance with HRS § 667-7(a)(2).[14]  Former HRS § 667-5(d).  As noted supra, Deutsche Bank did not comply with the time computation required by HRS § 667-7(a)(2) and thus did not, as

---

[14]    Because former HRS §§ 667-5 and 667-7 are in pari materia, inasmuch as they both discuss the notice of intention of foreclosure, we read the two statutes together.  See HRS § 1-16 (2009) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.").

required by HRS § 667-5(d), give proper notice.  Therefore, Deutsche Bank cannot avail itself of the public announcement postponement method in HRS § 667-5(d).

Even assuming Deutsche Bank provided timely notice of the date of sale by public announcement, Hungate contends Deutsche Bank was required—pursuant to former HRS § 667-5(a)(2)—to publish all postponements of the foreclosure sale in compliance with the mortgage's power of sale clause.  HRS § 667-5(a)(2) states that the attorney shall "[g]ive any notices and do all acts as are authorized or required by the power [of sale] contained in the mortgage."  (Emphasis added).  Thus, if the mortgage's power of sale clause requires more than what is required under HRS § 667 Part I, the mortgagee must follow the requirements of the power of sale clause.  The relevant portion of the power of sale clause of Hungate's mortgage states: "If Lender invokes the power of sale, . . . . Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale."  (Emphases added).  Under Hungate's interpretation of the clause, any change in the time, place, or terms specified in the notice of sale, which includes the date, time, and place of the sale, requires the lender to publish a new notice of sale with the new terms.

16

In contrast to Hungate's position, Deutsche Bank and Rosen interpret the power of sale clause to allow postponement by public announcement because the notice of sale expressly permits oral postponement.  The power of sale clause states that the mortgagee "shall sell the Property at the time and place and under the terms specified in the notice of sale."  (Emphasis added).  Because the notice of sale expressly states that the sale "may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf," Deutsche Bank and Rosen assert that oral postponement complied with the "terms specified in the notice of sale."  According to Deutsche Bank's and Rosen's analysis of the power of sale clause, only a single notice must be published, and not "a notice of sale for each postponed date."  (Emphasis added) (citing Lima v. Deutsche Bank Nat'l Trust Co., 943 F. Supp. 2d 1093, 1101 (D. Haw. 2013)).  Thus, under Deutsche Bank's and Rosen's interpretation of the power of sale clause, once a notice of sale is published, the power of sale is complied with as long as future postponements are publicly announced orally at the time of the scheduled sale.

Because there are two reasonable interpretations of the power of sale clause, an ambiguity exists as to whether a new notice must be published to postpone the foreclosure sale. See Wong, 130 Hawaiʻi at 45, 305 P.3d at 461 (explaining a

contract is ambiguous "when its terms are reasonably susceptible to more than one meaning").  The application of contract interpretation principles to resolve the power of sale clause's ambiguity supports the conclusion that Deutsche Bank was required to publish postponement notices.  "[A]ny ambiguity in a mortgage instrument should be construed against the party drawing the documents," State Sav. & Loan Ass'n v. Kauaian Dev. Co., 62 Haw. 188, 198, 613 P.2d 1315, 1322 (1980), or in other words, "against the party who supplies the words[.]" Restatement (Second) of Contracts § 206 (Am. Law Inst. 1981). The ambiguity in the power of sale clause should thus be resolved against Deutsche Bank, as the party who supplied the words of the contract.  Thus, the more stringent interpretation, which requires postponements of the sale be published through a new notice, prevails.  Accordingly, the circuit court should not have dismissed Hungate's complaints based on its reasoning that Deutsche Bank was not required to publish all postponements of the foreclosure sale.

### 3. A Hawaiʻi-licensed Attorney Is Not Required to Prepare or Sign a Notice of the Mortgagee's Intention to Foreclose

Former HRS § 667-5 (Supp. 2008) requires a mortgagee foreclosing under a power of sale "be represented by an attorney who is licensed to practice law in the State and is physically located in the State."  HRS § 667-5(a).  The attorney must

18

"[g]ive notice of the mortgagee's . . . intention to foreclose the mortgage and of the sale . . . by publication" and "[g]ive any notices and do all acts as are authorized or required by the power contained in the mortgage."  HRS § 667-5(a)(1)-(2).  Hungate contends that Deutsche Bank did not comply with HRS § 667-5 because the notice of sale for Hungate's property was not prepared and signed[15] by an attorney licensed in Hawaiʻi.[16]

The language of former HRS § 667-5 does not require a Hawaiʻi-licensed attorney to prepare or sign the notice.  Our "fundamental starting point for statutory interpretation is the language of [HRS § 667-5] itself."  Citizens Against Reckless Dev., 114 Hawaiʻi at 193, 159 P.3d at 152.  HRS § 667-5 only requires an attorney to "give notice" and "do all acts as are authorized or required" by the power of sale.  HRS § 667-5(a)(1)-(2).  Neither of these requirements involves the preparation and signing of a notice.  The language of the statute itself thus does not provide that a Hawaiʻi-licensed attorney is required to prepare or sign a notice.

---

[15]    Hungate also uses the terminology that a non-attorney "published" the notice.  But, as Deutsche Bank notes, Hungate stated in his opening brief in CAAP-13-0005234 that "Rosen caused to be published [the notice of sale] in the Kauai publication The Garden Island."

[16]    Deutsche Bank argues that Hungate waived this issue because it was not properly raised at trial.  Hungate explains that this issue was raised in his memorandum in opposition to the motion to dismiss.  Assuming arguendo that this claim was not waived, this claim is nonetheless meritless.

19

Additionally, the legislative history of HRS § 667-5 does not evince the intent that a Hawaiʻi-licensed attorney prepare or sign a notice of the mortgagee's intention to foreclose. The legislature's purpose in enacting HRS § 667-5 was to ensure that where a power of sale clause is included in the mortgage, interested parties be able to request and timely receive information. See Conf. Comm. Rep. No. 3-08, in 2008 House Journal, at 1710, 2008 Senate Journal, at 793; S. Stand. Comm. Rep. No. 2108, in 2008 Senate Journal, at 917. To accomplish this, the legislature required a mortgagee to hire a Hawaiʻi-licensed attorney, who is physically present in the state, to serve as a "contact individual" in order to facilitate the providing of information. S. Stand. Comm. Rep. No. 2108, in 2008 Senate Journal, at 917. A Hawaiʻi-licensed attorney must therefore serve as a contact individual and provide notice of a mortgagee's intent to foreclose on a property—but the legislative history contains no indication of legislative intent that the attorney prepare or sign a notice of the mortgagee's intention to foreclose.

Accordingly, the circuit court properly dismissed Hungate's first amended complaint as to his claim that a non-attorney prepared and signed the notice of sale.

### 4. Former HRS §§ 667-5 and 667-7 Create No Private Right of Action Against a Foreclosing Mortgagee's Attorney

Hungate contends Rosen owed statutory duties under HRS §§ 667-5 and 667-7. In response, Rosen argues former HRS § 667-5 fails to involve the kind of "special relationship" between Hungate and Rosen necessary for an attorney to owe a duty to a non-client. Generally, a duty imposed on an attorney in favor of an adversary of the attorney's client poses an "unacceptable conflict of interest." Buscher v. Boning, 114 Hawaiʻi 202, 220, 159 P.3d 814, 832 (2007). For that reason, absent special circumstances, attorneys owe no duty of care to non-clients. See id. The question raised here is whether the requirements of former HRS § 667-5 and former HRS § 667-7 impose duties that may be enforced against the attorney of a foreclosing mortgagee under a private right of action.

Requirements imposed by statutes do not necessarily give rise to a private right of action. Cannon v. University of Chicago, 441 U.S. 677, 688 (1979)(noting that the fact that a "statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person"). In considering whether a duty imposed by statute creates a private right of action, our court has consistently focused on the intent of the legislature. Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc., 110 Hawaiʻi

21

302, 312, 132 P.3d 1213, 1223 (2006).  We review such questions de novo as a matter of law.  Namauu v. City & Cty. of Honolulu, 62 Haw. 358, 362, 614 P.2d 943, 946 (1980)(noting that "the nature and extent of duty imposed by statute is a matter of law").

The language of former HRS § 667-5, as amended in 2008, indicates the legislature intended attorneys to provide notice of the mortgagee's intention to foreclose and notice of the sale of the mortgaged property; the language also shows the legislature intended attorneys to comply with the power of sale clause in the mortgage.  Former HRS § 667-5(a) explicitly states that "[t]he attorney shall[] . . . [g]ive notice of the mortgagee's . . . intention to foreclose the mortgage and of the sale of the mortgaged property."  (Emphasis added).  In addition, the attorney "shall . . . do all acts as are authorized or required by the power contained in the mortgage," such as complying with the power of sale clause of the mortgage. Former HRS § 667-5(a)(2) (emphasis added).  An attorney thus is required under the statute to give proper notice and to perform all acts authorized or required by the power of sale clause.[17] Although Rosen failed to follow some requirements of former HRS

_____

[17]     Former HRS § 667-5(d), however, permits the mortgagee or "some person acting on the mortgagee's behalf"—not necessarily an attorney—to postpone the sale by public announcement.

§ 667-5, we hold that the statute did not create a cause of action against attorneys who fail to follow its requirements.

In determining whether a private cause of action should be recognized based on statutory requirements, we consider the following factors: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether a private cause of action would be "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." Whitey's Boat Cruises, 110 Hawaiʻi at 312, 132 P.3d at 1223. While each factor is relevant, "the key factor" is whether the legislature "intended to provide the plaintiff with a private right of action." Id. at 313 n.20, 132 P.3d at 1224 n.20; see also Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (noting that the three factors used to assess whether a private cause of action may be implied from statutory language ultimately "are ones traditionally relied upon in determining legislative intent").

We first consider whether Hungate was a member of the class for whose special benefit the statute was enacted. As discussed supra, the statute was amended to benefit the "party in breach of the mortgage agreement." H. Stand. Comm. Rep. No.

1192, in 2008 House Journal, at 1450.  As the party in breach of the mortgage contract, Hungate falls within the class for whom the statute was enacted.

The second factor considers whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one."  Whitey's Boat Cruises, Inc., 110 Hawaiʻi at 312, 132 P.3d at 1223.  Former HRS § 667-5 and its legislative history are silent as to whether the legislature intended to create a cause of action on behalf of the mortgagor against the mortgagee's lawyer.[18]  "[I]mplying a private right of action on the basis of [legislative] silence is a hazardous enterprise, at best."  Touche Ross & Co, 442 U.S. at 571.  Nonetheless, legislative silence alone is not dispositive. See 1A C.J.S. Actions § 62 (2016)(when a statute is silent, a court may infer a statutory private right of action where there is strong evidence that "the statutory scheme" implies it).

We turn, then, to the third factor, whether a private cause of action would be consistent with "the underlying purposes of the legislative scheme."  Whitey's Boat Cruises, Inc., 110 Hawaiʻi at 312, 132 P.3d at 1223. Here, amendments to the foreclosure process set forth in HRS chapter 667 Part I were intended to "expand[] the rights of mortgagors."  Kondaur

_____

[18]    HRS § 667-4 (1993) does provide the mortgagor may defend against foreclosure.

24

Capital Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 239, 361 P.3d 454, 466 (2015) (explaining that amendments to former HRS § 667-5 "added requirements that mortgagees must fulfill in order to accomplish a valid foreclosure sale" resulting in a benefit to mortgagors by "expand[ing] and bolster[ing] the protections to which they are entitled").

However, a close reading of the legislative history of the 2008 amendment shows it was enacted to set additional burdens on the mortgagee to protect the mortgagor; the statute was not amended to regulate attorneys representing mortgagees. The amendment's structure or scheme attempted "to streamline and ensure transparency in the non-judicial foreclosure process by requiring a foreclosure mortgagee to provide pertinent information regarding the property to interested parties." S. Stand. Comm. Rep. No. 2108, in 2008 Senate Journal, at 917 (emphasis added).

The committee reports explain that potential buyers and other interested parties faced difficulties in obtaining updated information regarding foreclosure sales from banks and entities located outside of Hawaiʻi: "A large number of Hawaii foreclosures are handled by servicing corporations located on the mainland that provide little to no information relating to the foreclosure to parties that are entitled to information regarding the property to be foreclosed." Conf. Comm. Rep. No.

25

3-08, in 2008 House Journal, at 1710, 2008 Senate Journal, at 793. Due to the growing concern that mortgagees were creating obstacles for parties seeking information, the legislature required a mortgagee to hire a Hawaiʻi-licensed attorney, who is physically present in the state, to serve as a "contact individual." S. Stand. Comm. Rep. No. 2108, in 2008 Senate Journal, at 917. The legislature concluded that a "Hawaii-based attorney will ensure that interested parties have a means to obtain information from a person with a local presence and the ability to provide useful information." Conf. Comm. Rep. No. 3-08, in 2008 House Journal, at 1710, 2008 Senate Journal, at 793. Thus, the underlying structure and intent of the amendment was to enable interested parties to request and receive information in a timely manner from mortgagees, and not to regulate attorneys' conduct. Permitting a mortgagor to assert a claim against the foreclosing mortgagee's attorney for failure to comply with former HRS § 667-5 falls outside this statutory scheme.

We also consider the further factor of whether "additional remedies are unnecessary" when determining whether to recognize a new cause of action. Best Place, Inc. v. Penn America Ins. Co., 82 Hawaiʻi 120, 126, 920 P.2d 334, 340 (1996). In this case, creating a cause of action under former HRS § 667-5 is not necessary to protect the interests of the mortgagor.

26

Rather, the mortgagor can protect its interests through filing a claim against the mortgagee for wrongful foreclosure. See Santiago v. Tanaka, 137 Hawaiʻi 137, 158-59, 366 P.3d 612, 633-34 (2016) (holding the nonjudicial foreclosure was wrongful and awarding restitution to mortgagor). When voiding the foreclosure is not possible, the mortgagor is entitled to "restitution of their proven out-of-pocket losses" through a wrongful foreclosure claim. Id. at 158, 366 P.3d at 633. Because mortgagees could be required to provide restitution to injured mortgagors under a wrongful foreclosure claim, a "sufficient incentive" exists for mortgagees to ensure that the foreclosure proceedings are correctly performed by attorneys. Best Place, Inc., 82 Hawaiʻi at 127, 920 P.2d at 341. The interests of the mortgagor are thus protected.

In sum, we conclude that recognizing a cause of action based upon former HRS § 667-5 is not warranted. Because former HRS §§ 667-5 and 667-7 are in pari materia, inasmuch as they both discuss the notice of intention of foreclosure, we read the two statutes together. See HRS § 1-16 (2009) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other."). Accordingly, for the same reasons Hungate cannot assert a cause of action against Rosen under HRS § 667-5, he cannot assert a claim under HRS § 667-7.

Hungate also makes a contract-based argument that

27

Rosen was required to adhere to the mortgage's power of sale clause because former HRS § 667-5(a)(2) states that the attorney shall "[g]ive any notices and do all acts as are authorized or required by the power [of sale] contained in the mortgage." However, Hungate's ability to make this contract-based claim ultimately relies upon the availability of a cause of action under former HRS § 667-5.  As discussed supra, Hungate cannot assert a viable cause of action against Rosen under HRS § 667-5; thus, his contract-based claim does not stand.

**B.    Deutsche Bank Must Use Reasonable Means to Obtain the Best Price for a Foreclosed Property**

In addition to Hungate's allegations that Deutsche Bank and Rosen violated HRS § 667 Part I and the mortgage contract, Hungate asserts that Deutsche Bank violated common law duties established in Silva and Ulrich v. Sec. Inv. Co., 35 Haw. 158 (Haw. Terr. 1939).  Quoting Ulrich, Hungate contends that failing to give proper notice under former HRS § 667-7(a)(2) and failing to publish postponement announcements as required by the mortgage's power of sale clause constituted violations of the common law duty to "use all fair and reasonable means in obtaining the best prices for the property on sale[.]"  Ulrich, 35 Haw. at 168.  We agree.  In reaching this conclusion, we first discuss the duty owed by mortgagees under Ulrich.  We then address the burden of the mortgagee who purchases the foreclosed

28

property to demonstrate that the foreclosure sale was "regularly and fairly conducted" and that "an adequate price" was paid by the mortgagee.  Ulrich, 35 Haw. at 168.

### 1. Deutsche Bank Owes a Common Law Duty to Hungate

We recently reaffirmed Ulrich and recognized that this common law duty extends to mortgagees conducting non-judicial foreclosure sales of real property.  See Kondaur Capital Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 361 P.3d 454 (2015).  At the time Ulrich was decided, the law did not distinguish between real property and chattel mortgages;[19] accordingly, the court did not limit Ulrich's holding to chattel mortgages.  See RLH §

---

[19]    The statutory provisions governing non-judicial foreclosures when Ulrich was decided were Revised Laws of Hawaiʻi (RLH) §§ 4724-4728 (1935). Ulrich, 35 Haw. at 163.  RLH § 4724, the former version of HRS § 667-5, provided as follows:

> Notice of foreclosure; affidavit after sale.  When a power of sale is contained in a mortgage, the mortgagee, or any person having his estate therein, or authorized by such power to act in the premises, may, upon a breach of the condition, give notice of his intention to foreclose the mortgage, by publication of such notice in the English language once in each of three successive weeks, the first publication to be not less than twenty-eight days before the day of sale, and the last publication to be not less than fourteen days before the day of sale, in a newspaper published either in the county in which the mortgaged property lies, or in Honolulu, and having a circulation in such county; and also give such notices and do all such acts as are authorized or required by the power contained in the mortgage.  He shall, within thirty days after selling the property in pursuance of the power, file a copy of the notice of sale and his affidavit, setting forth his acts in the premises fully and particularly, in the bureau of conveyances, in Honolulu.  The affidavit and copy of the notice shall be recorded by the registrar, with a notice of reference thereto in the margin of the record of the mortgage deed, if recorded in his office.

4724; Kondaur, 136 Hawaiʻi at 240, 361 P.3d at 467 (analyzing RLH § 4727); Ulrich, 35 Haw. at 163-68.  In Kondaur, we explained that Ulrich's rationale, to protect the mortgagor from being "wrongfully and unfairly taken advantage of by the mortgagee," applies with equal force to non-judicial foreclosure sales of real property.  Kondaur, 136 Hawaiʻi at 240, 361 P.3d at 467.  Mortgagors of both real and personal property therefore continue to benefit from the protections set forth in Ulrich.  Id. at 240, 361 P.3d at 467.  Accordingly, under Kondaur and Ulrich, in addition to the duties required under the now-repealed HRS § 667 Part I, a mortgagee has a duty to use "fair and reasonable means in obtaining the best prices for the property on sale."  Id. at 235, 361 P.3d at 462 (citing Ulrich, 35 Haw. at 168); see also Silva, 5 Haw. at 265 (requiring the mortgagee "to use discretion in an intelligent and reasonable manner, not to oppress the debtor or to sacrifice his estate").

We further clarify that the mortgagee's duty to seek the best price under the circumstances does not require the mortgagee to obtain the fair market value of the property.  Indeed, "[m]any commentators have observed that the foreclosure process commonly fails to produce the fair market value for foreclosed real estate."  Restatement (Third) of Prop.: Mortgages § 8.3 cmt. a (Am. Law Inst. 1997).  There are several reasons why foreclosure sales fail to attract fair market value

bids, such as the difficulty in inspecting the subject properties, technical publication notices, marketable title concerns, and the lack of a willing seller.  Id.; see also First Bank v. Fischer & Frichtel, Inc., 364 S.W.3d 216, 226 (Mo. 2012) (en banc) (Teitelman, C.J., dissenting) (stating "'it is well known that property, when sold at a forced sale, usually does not bring its full value' and, instead, 'has the potential of bringing only a fraction of the fair market value'" (citations omitted)).  While final bids on foreclosed property need not equate to fair market values, the mortgagee nonetheless has a duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances.

2. **Deutsche Bank Carries the Additional Burden to Demonstrate a Regular and Fair Sale and an Adequate Sale Price**

In addition to the duty of a mortgagee to use fair and reasonable means to obtain the best price for the property, a mortgagee who purchases the foreclosed property has the burden to show that the sale was "regularly and fairly conducted" and that "an adequate price" was paid under the circumstances. Ulrich, 35 Haw. at 168; see also Kondaur, 136 Hawaiʻi at 241-42, 361 P.3d at 468-69.  As we explained in Kondaur, "[i]n instances where the mortgagee assumes the role of a purchaser in a self-dealing transaction, the burden is on the mortgagee . . . to

establish its compliance with these obligations." Id. at 240, 361 P.3d at 467. This burden properly falls on the mortgagee because in choosing to conduct the non-judicial foreclosure sale under HRS § 667 Part I, the mortgagee elects a position superior to the mortgagor with a duty to treat the mortgagor fairly and without resorting to the advantage derived from its authority to conduct the sale.

There is no neutral party, such as a court, supervising the sale and ensuring a fair and reasonable process. When the non-judicial foreclosure sale results in the mortgagee purchasing the property, it is therefore imperative that the mortgagee establish that this result occurred after a fairly conducted sale. Id. at 241-43, 361 P.3d at 468-70. Accordingly, because Deutsche Bank purchased Hungate's property, Deutsche Bank has the burden to establish that the sale was fairly conducted and resulted in an adequate price under the circumstances. Id. at 240-42, 361 P.3d at 467-69.

C. **The Circuit Court Erred in Dismissing Hungate's Unfair or Deceptive Acts or Practices Claim Against Deutsche Bank, but Properly Dismissed Hungate's Claim Against Rosen**

Hungate alleged that Deutsche Bank and Rosen committed unfair or deceptive acts or practices, in violation of HRS

§ 480-2,[20] by providing less than the statutorily required four weeks of notice and failing to publish the notice of sale.  HRS § 480-2(a) provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

HRS § 480-2 contains "broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]."  Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 228, 11 P.3d 1, 16 (2000) (quoting Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980), overruled on other grounds by Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 247, 982 P.2d 853, 876 (1999)).  "HRS chapter 480's paramount purpose was to 'encourage those who have been victimized by persons engaging in unfair or deceptive acts or practices to prosecute their claim' thereby affording 'an additional deterrent to those who would practice unfair and deceptive business acts.'"  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 317, 47 P.3d 1222, 1230 (2002) (citations omitted).  This statute "is remedial in nature and must be liberally construed in order to accomplish the purpose for which it was enacted."  Keka, 94 Hawai'i at 229, 11 P.3d at 17; see also Compton v.

_____

[20]    Hungate also alleged an unfair methods of competition claim in his complaint and first amended complaint, but does not dispute the circuit court's dismissal of that claim in his appeal.

Countrywide Fin. Corp., 761 F.3d 1046, 1052 (9th Cir. 2014)(applying Hawaiʻi law).

To assert an unfair or deceptive acts or practices claim pursuant to HRS § 480-2, Hungate must qualify as a "consumer" and the alleged conduct of Rosen and Deutsche Bank must involve "trade or commerce."  We address separately Hungate's claims against Deutsche Bank and Rosen for unfair and deceptive acts or practices.

**1.  Hungate Sufficiently Alleged Deutsche Bank Violated HRS § 480-2 by Engaging in Unfair or Deceptive Acts or Practices**

As a mortgagor who purchased residential property, Hungate alleges he qualifies as a consumer under HRS chapter 480.  A consumer is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  HRS § 480-1 (2008).  "[I]n the context of consumer debt, the determination of whether the individual seeking suit is a 'consumer' should rest on whether the underlying transaction which gave rise to the obligation" met the requirements of HRS § 480-1.  Flores v. Rawlings Co., LLC, 117 Hawaiʻi 153, 164, 177 P.3d 341, 352 (2008).  Here, the underlying transaction involved committing money in a personal investment pursuant to HRS § 480-1, namely, purchasing residential property.  See Keka, 94

34

Hawaiʻi at 227, 11 P.3d at 15 (citing <u>Cieri v. Leticia Query Realty, Inc.</u>, 80 Hawaiʻi 54, 69, 905 P.2d 29, 44 (1995))(explaining "real estate or residences qualify as 'personal investments'").  Further, we have held that an individual who purchases residential property through acquiring a loan, i.e., a "loan borrower," is a "consumer" committing money in a personal investment within the meaning of HRS § 480-1.  <u>Keka</u>, 94 Hawaiʻi at 227, 11 P.3d at 15 (citing <u>Cieri</u>, 80 Hawaiʻi at 69, 905 P.2d at 44).  Hungate, as a loan borrower who purchased residential property, is thus a consumer.

We also conclude Deutsche Bank's acts occurred in trade or commerce.  Trade or commerce means a "business context."  <u>Cieri</u>, 80 Hawaiʻi at 65, 905 P.2d at 40. Transactions conducted in a business context, "by their very nature, include transactions conducted by a financial institution," such as a "loan extended by a financial institution[.]"  <u>Keka</u>, 94 Hawaiʻi at 227, 11 P.3d at 15.  Thus, the nature of a non-judicial foreclosure, which results from a loan transaction, is that of a transaction conducted in the business context.  It is undisputed that Deutsche Bank is a financial institution regularly engaged in providing loans and conducting foreclosures.  Deutsche Bank's acts throughout the foreclosure proceedings therefore occurred in the business context.

35

We next consider whether Hungate alleged sufficient facts that Deutsche Bank engaged in unfair or deceptive acts.[21] "The question of whether a practice constitutes an unfair or deceptive trade practice is ordinarily a question of fact." Balthazar v. Verizon Haw., Inc., 109 Hawaiʻi 69, 72 n.4, 123 P.3d 194, 197 n.4 (2005) (citation omitted).  To determine sufficiency, we accept the allegations made in Hungate's complaints as true and "view them in the light most favorable to" Hungate.  Cayetano, 111 Hawaiʻi at 476, 143 P.3d at 15. "[D]ismissal is proper only if it 'appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] that would entitle [them] to relief.'"  Id. (citation omitted).

A practice "is unfair when it [1] offends established public policy and [2] when the practice is immoral, unethical, oppressive, unscrupulous or [3] substantially injurious to consumers."  Keka, 94 Hawaiʻi at 228, 11 P.3d at 16 (citation omitted).  Hungate need not allege that Deutsche Bank's actions

_____

[21]    The circuit court did not reach the merits of Hungate's unfair or deceptive acts or practices claim in its dismissals of the initial complaint and the first amended complaint.  In its dismissal of the initial complaint, the circuit court found that Hungate did not have standing to assert an unfair or deceptive acts or practices claim against Rosen, and thus did not reach the merits of Hungate's claim.  In dismissing the first amended complaint against Deutsche Bank, the court explained that Hungate's unfair or deceptive acts or practices claim was based in part on his allegation that Deutsche Bank failed to comply with the four-week requirement and failed to publish notice of the postponements of the foreclosure sale.  The court determined that Hungate did not state a claim as to these issues and did not further address Hungate's unfair or deceptive acts or practices claim.

36

meet all three of these factors to assert an unfair act or practice.  See id. at 229, 11 P.3d at 17 (determining that the conduct in question was "unethical, oppressive, unscrupulous and substantially injurious to consumers," but not addressing whether the conduct offended public policy); Kapunakea Partners v. Equilon Enters. LLC, 679 F. Supp. 2d 1203, 1210 (D. Haw. 2009)(analogizing the three factors as applied to federal antitrust laws to application of HRS § 480-2 to determine "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three" (citation omitted)).

A practice may be unfair if it "offends public policy as it has been established by statutes, the common law, or otherwise[.]"  Kapunakea Partners, 679 F. Supp. 2d at 1210 (citing FTC v. Sperry & Hutchinson, 405 U.S. 233, 244 n.5 (1972)).  Hungate claims Deutsche Bank's conduct offended public policy because Rosen's actions, on behalf of Deutsche Bank, violated HRS § 667 Part I, as discussed supra.  Deutsche Bank also bore a common law duty to "use all fair and reasonable means in obtaining the best prices for the property on sale[.]" Kondaur, 136 Hawaiʻi at 235, 361 P.3d at 462 (citing Ulrich, 35 Haw. at 168); see also U.S. Bank Nat'l Ass'n v. Castro, 131 Hawaiʻi 28, 39, 313 P.3d 717, 728 (2013)(recognizing that a purpose of non-judicial foreclosure statutes is to "protect the

37

debtor from a wrongful loss of property" (citation omitted));

Hoge v. Kane, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983)

(discouraging any action that "prevents a free, fair, and open

[judicial foreclosure] sale or [that] chills the sale").  A

factfinder could determine Deutsche Bank's conduct offended

public policy or otherwise met the test for "unfair," and

therefore Hungate sufficiently alleged that Deutsche Bank

engaged in unfair acts or practices.

Hungate also alleged that Deutsche Bank conducted the

non-judicial foreclosure deceptively.  A deceptive act or

practice is "(1) a representation, omission, or practice[] that

(2) is likely to mislead consumers acting reasonably under the

circumstances [where] (3)[] the representation, omission, or

practice is material."  Courbat v. Dahana Ranch, Inc., 111

Hawaiʻi 254, 262, 141 P.3d 427, 435 (2006) (citation omitted).

A representation, omission, or practice is material if it

"involves 'information that is important to consumers and,

hence, likely to affect their choice of, or conduct regarding, a

product.'"  Id. (citation omitted).  The test to determine

deceptiveness "is an objective one, turning on whether the act

or omission 'is likely to mislead consumers,' . . . as to

information 'important to consumers' . . . in making a decision

regarding the product or service."  Id. (citations omitted).

"[P]roof of actual deception is unnecessary." Rosa v. Johnston, 3 Haw. App. 420, 427, 651 P.2d 1228, 1234 (1982).

The same conduct that Hungate alleges to be unfair may also be considered to be deceptive. Hungate contends Rosen's practice, on behalf of Deutsche Bank, of conducting foreclosure sales on the 28th rather than 29th day from the date of first publication and failing to publish postponements of the sale date was likely to mislead reasonable consumers and could reduce buyer interest. Such practices could render potential buyers less able to determine whether the property was available for sale and less able to obtain important information regarding the property. As the United States Court of Appeals for the Ninth Circuit explained, "[p]roper notice of the actual date of a foreclosure auction is essential to ensure that foreclosed properties bring adequate prices and that the public has an appropriate opportunity to bid." Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa), 674 F.3d 1083, 1091 (9th Cir. 2012). Although Kekauoha-Alisa presented a stronger case in which no public announcement of the sale was provided at all, the failure to publish the postponement of a foreclosure sale could mislead consumers. Thus, a factfinder could determine Rosen's scheduling of a foreclosure sale too early and failure to publish postponement notices, while acting on Deutsche Bank's behalf, were deceptive acts.

In addition to adequately alleging sufficient facts that Deutsche Bank's conduct were unfair or deceptive pursuant to HRS § 480-2, Hungate was also required to allege sufficient facts to show he was injured. See HRS § 480-13. "[T]he mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage." Ai, 61 Haw. at 618, 607 P.2d at 1312 (overruled on other ground by Robert's, 91 Hawaiʻi at 247, 982 P.2d at 876). HRS chapter 480 does not define injury or damages, but "Hawaiʻi courts have not set a high bar for proving" injury. Compton, 761 F.3d at 1053. Hungate need only allege that "he has, as a 'direct and proximate result' of [Deutsche Bank's] violation [of section 480-2], 'sustained special and general damages' . . . to withstand a motion to dismiss." Id. at 1054 (citations omitted). Based on the allegations in the complaints, the factfinder could determine Hungate was injured by the foreclosure sale, which eliminated equity that Hungate held in the property and prevented him from using the property.

Accordingly, we hold that Hungate sufficiently alleged claims of unfair and deceptive acts or practices under HRS § 480-2 against Deutsche Bank, and the circuit court erred in dismissing Hungate's unfair or deceptive acts or practices claim against Deutsche Bank.

**2.    Under the Circumstances, Hungate Cannot Claim Unfair or Deceptive Acts or Practices by Rosen**

Hungate also argues that he has standing as a consumer to assert an unfair or deceptive acts or practices claim against Rosen.  Rosen maintains that the circuit court properly dismissed Hungate's unfair or deceptive acts or practices claim because Hungate was not a consumer of Rosen's services.  We rejected a similar contention in Flores.  In Flores, the plaintiffs brought an unfair or deceptive acts or practices claim against a collection agency that provided subrogation and claims recovery services to the Hawaiʻi Medical Services Association (HMSA) based on actions conducted in regards to a loan agreement between plaintiffs and HMSA.  Flores, 117 Hawaiʻi at 155-57, 177 P.3d at 343-45.  Citing the statute's definition of "consumer," the collection agency argued that the plaintiffs were not consumers because the plaintiffs did not purchase, attempt to purchase, or solicit to purchase goods or services from the agency.  Id. at 163, 177 P.3d at 351; see HRS 480-1. We disagreed with the agency's argument, and held that "the statutory structure of HRS chapter 480 does not require that one be a 'consumer' of the defendant's goods or services, but merely a 'consumer.'"  Id. at 164, 177 P.3d at 352.  A plaintiff "establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship

41

with the defendant." Id. Therefore, the "only requirement" is that the consumer's commitment of money, property, or services in a personal investment forms the basis of his complaint. Id. at 164-65, 177 P.3d at 352-53. As Hungate asserts, he is a consumer based on the mortgage with Deutsche Bank, and is thus also a "consumer vis-à-vis the mortgagee's lawyer for the same transaction."

Additionally, Hungate argues that Rosen acted as an agent for Deutsche Bank in conducting the foreclosure, and thus should be similarly held liable under the UDAP statute. Hungate cites Cieri v. Leticia Query Realty, Inc., 80 Hawaiʻi 54, 65, 905 P.2d 29, 40 (1995), to show that an agent or broker in a real estate transaction can be sued for UDAP under HRS § 480-2. However, the unique nature of the attorney-client relationship warrants distinguishing the role of broker and attorney for purposes of this case. Sellers and purchasers of real estate often "utilize and rely on brokers for their expertise and resources, including access to data in locating properties as well as determining pricing of 'comparables' as a basis for negotiations." Cieri, 80 Hawaiʻi at 65, 905 P.2d at 40. Hence, the role of a broker is to provide clients with expertise and resources in real estate transactions.

In contrast, the role of an attorney involves representing a client's interests against those of an opposing

party within an adversary system.  Attorneys bear a duty to zealously represent clients "within the bounds of the law." Giuliani v. Chuck, 1 Haw. App. 379, 384, 620 P.2d 733, 737 (1980); see also Hawai'i Rules of Professional Conduct, "Preamble," ¶ 2; ¶ 8; ¶ 9.[22]  In other settings, we have declined to recognize a duty in favor of a plaintiff adversely affected by an attorney's performance of legal services on behalf of the opposing party.  In Boning, we noted that "creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest.  Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship."  Boning, 114 Hawai'i at 220, 159 P.3d at 832.

Permitting a party to sue his or her opponent's attorney for UDAP under HRS § 480-2 in foreclosure actions presents a similar issue in that an attorney's concern with being sued by a party opponent could compromise his or her representation of the client.  In a UDAP action, an attorney would be especially vulnerable to suit because, for example, under HRS § 480-2 "actual deception need not be shown; the

---

[22]    Our desire to avoid creating unacceptable conflicts of interest in this context, to protect attorney-client counsel and advice from the intrusion of competing concerns, and to allow adequate room for zealous advocacy, does not encompass, for example, allowing attorneys to conduct patently illegal activities on behalf of clients.

capacity to deceive is sufficient." Keka, 94 Hawaiʻi at 228, 11 P.3d at 16 (emphasis added) (citations omitted). Accordingly, a plaintiff would need only to allege that opposing counsel has breached the statutory duty under HRS § 480-2 "not to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . in a way that caused private damages[] in order to state a claim under" HRS chapter 480. Compton, 761 F.3d at 1056. Given that UDAP lacks a more rigorous or precise state of mind requirement, "even a carefully rendered opinion could, if incorrect, have the capacity to deceive." Short, 691 P.2d at 172 (Pearson, J., concurring). The attorney would therefore "have to insure the correctness of his [or her] opinions and strategies," rendering it "virtually impossible for an attorney to effectively perform the traditional role of legal counselor." Id. Similar to the negligence issue in Boning, in foreclosure actions an attorney's justifiable concern with being sued by the opposing party for UDAP could compromise the attorney's ability to zealously represent his or her client. Consequently, based on the allegations against Rosen, we decline to recognize a UDAP claim against him by Hungate under HRS § 480-2 in the instant foreclosure action.[23]

_____

[23] We do not now decide whether the 2012 amendments to the foreclosure statute create potential UDAP liability under some circumstances for attorneys conducting nonjudicial foreclosures. See HRS § 667-60 (2016)(imposing UDAP liability on "any foreclosing mortgagee" for violating a

(continued . . .)

Accordingly, the circuit court properly dismissed Hungate's complaint alleging Rosen violated HRS § 480-2 by engaging in unfair or deceptive acts or practices.

## IV. Conclusion

For the foregoing reasons, we vacate in part the circuit court's November 5, 2013 order granting Rosen's motion to dismiss, and vacate in part the circuit court's April 8, 2014 order granting Deutsche Bank's motion to dismiss, and remand to the circuit court for proceedings consistent herewith.

| | |
|---|---|
| James J. Bickerton, John Francis Perkin, Stanley K. Roehrig for appellant | /s/ Mark E. Recktenwald<br>/s/ Paula A. Nakayama<br>/s/ Sabrina S. McKenna |
| Christopher T. Goodin, David B. Rosen, Peter W. Olsen for appellee Rosen | /s/ Richard W. Pollack<br>/s/ Michael D. Wilson |
| Judy A. Tanaka for appellee Deutsche Bank | |



---

(. . . continued)
series of provisions governing nonjudicial foreclosure); HRS § 667-1 (2016)(defining "mortgagee" to include "the current mortgagee's or lender's duly authorized agent").