**Electronically Filed
Supreme Court
SCWC-19-0000841
12-JUL-2022
09:19 AM
Dkt. 62 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

E. KALANI FLORES,
Petitioner/Plaintiff-Appellant,

vs.

ARTHUR LOGAN IN HIS CAPACITY AS CHIEF OF POLICE
OF THE CITY AND COUNTY OF HONOLULU; PAUL FERREIRA IN HIS
CAPACITY AS CHIEF OF POLICE OF THE COUNTY OF HAWAI'I
POLICE DEPARTMENT; JOHN PELLETIER IN HIS CAPACITY AS
CHIEF OF POLICE OF MAUI COUNTY,
Respondents/Defendants-Appellees.[1]

SCWC-19-0000841

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000841; CIV. NO. 3CC191000190)

JULY 12, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

This case arises from the controversy surrounding the

construction of the Thirty Meter Telescope (TMT) on Mauna Kea,

---

[1] Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1) (2010), Arthur Logan, Chief of Police of the City and County of Honolulu, has been substituted as a party in place of former Chief of Police Susan Ballard, and John Pelletier, Chief of Police of Maui County, has been substituted as a party in place of former Chief of Police Tivoli Faaumu.

located on the Island of Hawaiʻi. Petitioner/Plaintiff-Appellant E. Kalani Flores (Flores) challenged the presence of police officers from the Honolulu Police Department (HPD) and Maui County Police Department (MPD), who were assisting the Hawaiʻi County Police Department (HCPD) within the County of Hawaiʻi. The Circuit Court of the Third Circuit (circuit court) determined that Hawaiʻi Revised Statutes (HRS) § 52D-5 does not provide for a private right of action and dismissed Flores's complaint.

On certiorari, Flores argues that the Intermediate Court of Appeals (ICA) erroneously affirmed the circuit court's "Order Granting Defendant Susan Ballard's Motion to Dismiss" (Order Granting Motion to Dismiss). We hold that the circuit court did not err when it dismissed Flores's complaint because there is no private right of action pursuant to HRS § 52D-5. In addition, the ICA correctly determined that mutual aid between police departments of different counties is allowed under Hawaiʻi law. Accordingly, the ICA did not err by affirming the circuit court's Order Granting Motion to Dismiss and we affirm the ICA's Judgment on Appeal.

I.   BACKGROUND

A.   Factual Background

In 2014, Flores requested that the Board of Land and Natural Resources (the Board) hold a contested case hearing prior to approving a sublease of land on Mauna Kea from the University of Hawai'i to the TMT International Observatory for the purpose of constructing the TMT.  Flores v. Bd. of Land & Nat. Res., 143 Hawai'i 114, 117-18, 424 P.3d 469, 472-73 (2018).  The Board denied Flores's request for a contested case hearing and Flores appealed to the Environmental Court of the Third Circuit (environmental court), which agreed that Flores had a constitutional right to a contested case hearing.  Id. at 116, 424 P.3d at 471.  On secondary appeal, this court reversed the environmental court's decision and held that Flores had a "constitutionally cognizable property interest," id. at 126, 424 P.3d at 481, but "was not entitled to a contested case hearing regarding whether [the Board] should consent to the Sublease." Id. at 128, 424 P.3d at 483.  Thus, construction of the TMT was allowed to proceed after years of legal challenges.

On July 13, 2019, Flores and a number of other people assembled at Pu'u Huluhulu near the access road to Mauna Kea's summit after police officers blocked public access to Mauna Kea's summit.  At Pu'u Huluhulu, Flores and the group engaged in

3

religious rituals and expressed their reverence for Mauna Kea and opposition to the TMT project while blocking the access road.  On July 15, 2019, the Chief of HCPD, Respondent/Defendant-Appellee Paul Ferreira (Chief Ferreira), and the Chief of HPD, Respondent/Defendant-Appellee Susan Ballard (Chief Ballard), entered into an interdepartmental assignment agreement pursuant to HRS § 78-27 (2012),[2] in which

---

[2]     HRS § 78-27 (2012) provides:

> Temporary inter- and intra-governmental assignments and exchanges.  (a) With the approval of the respective employer, a governmental unit of this State may participate in any program of temporary inter- or intra-governmental assignments or exchanges of employees as a sending or receiving agency.  "Agency" means any local, national, or foreign governmental agency or private agency with government sponsored programs or projects.
> (b) As a sending agency, a governmental unit of this State may consider its employee on a temporary assignment or exchange as being on detail to a regular work assignment or on leave of absence without pay from the employee's position.  The employee on temporary assignment or exchange shall be entitled to the same rights and benefits as any other employee of the sending agency.
> (c) As a receiving agency, a governmental unit of this State shall not consider the employee on a temporary assignment or exchange who is detailed from the sending agency as its employee, except for the purpose of disability or death resulting from personal injury arising out of and in the course of the temporary assignment or exchange.  The employee on detail may not receive a salary from the receiving agency, but the receiving agency may pay for or reimburse the sending agency for the costs, or any portion of the costs, of salaries, benefits, and travel and transportation expenses if it will benefit from the assignment or exchange.
> (d) An agreement consistent with this section and policies of the employer shall be made between the sending and receiving agencies on matters relating to the assignment or exchange, including but not limited to supervision of duties, costs of salary and benefits, and travel and transportation expenses; provided that the agreement shall not diminish any rights or benefits to

4

Chief Ferreira delegated police authority to HPD officers who were temporarily assigned to support HCPD operations relating to the TMT construction project.  On July 16, 2019, the Chief of MPD, Respondent/Defendant-Appellee Tivoli Faaumu (Chief Faaumu), entered into an identical interdepartmental assignment agreement with Chief Ferreira (collectively, the Inter-Departmental Agreements).[3]

On July 16, 2019, HPD and MPD officers arrived on the Island of Hawai'i to provide support to HCPD.  Chief Ferreira deputized the assisting officers from HPD and MPD and instructed

---

which an employee of a governmental unit of this State is entitled under this section.
(e) As a receiving agency, a governmental unit of this State may give the employee of the sending agency on a temporary assignment or exchange an exempt appointment and grant the employee rights and benefits as other exempt appointees of the receiving agency if it will benefit from the assignment or exchange.

(Emphasis added.)

[3]  The Inter-Departmental Agreements contained the following recitals:

WHEREAS, HCPD desires the services of [HPD/MPD] personnel and [HPD/MPD] has agreed to the temporary assignment of [HPD/MPD] personnel and to support and manage police operations in conjunction with the Thirty Meter Telescope Project ("TMT Project") and any other assignment as deemed necessary by the HCPD Chief of Police or his designee with the approval of [HPD/MPD]; and
WHEREAS, this employment is a temporary interdepartmental assignment and this employment is made under the provisions of [HRS §] 78-27(a-d).

While the Inter-Departmental Agreements cited HRS § 78-27 as authority for the inter-department assignments from HPD and MPD to HCPD, the "Delegation of Police Authority" attached to each agreement (Delegations) cited HRS § 52D-5 as authority for Chief Ferreira to deputize the assisting officers to act in a law enforcement capacity within the County of Hawai'i.

them to assist with clearing the access road to Mauna Kea's summit so that the construction equipment could proceed. HPD officers assisted Chief Ferreira until July 17, 2019, and then withdrew once it was determined that their assistance was no longer needed.[4]

**B. Circuit Court Proceedings[5]**

On July 17, 2019, Flores filed a "Complaint for Declaratory and Injunctive Relief" in the circuit court naming Chief Ballard, Chief Faaumu, and Chief Ferreira (collectively, the Chiefs of Police) as Defendants. Flores challenged the presence and legal authority of police officers from HPD and MPD within the County of Hawaiʻi. Flores's complaint alleged that the Chiefs of Police violated HRS § 52D-5[6] by using HPD and MPD

---

[4]    Presumably, MPD officers also withdrew on July 17, 2019.

[5]    The Honorable Henry T. Nakamoto presided.

[6]    HRS § 52D-5 (2012) provides:

> Powers of the chief of police outside own county.
> The chief of police of each county and any duly authorized subordinates shall have and may exercise all powers, privileges, and authority necessary to enforce the laws of the State, in a county other than the county in and for which the chief has been appointed, if:
> (1) The exercise of such power, privilege, and authority is required in the pursuit of any investigation commenced within the county in and for which the chief has been appointed; and
> (2) The concurrence of the chief of police of the county in which the power, privilege, and authority sought to be exercised is obtained.

(Emphasis added.)

6

officers to assist HCPD and that the HPD and MPD officers lacked legal authority to exercise police powers within the County of Hawaiʻi. Flores sought as relief (1) a judgment declaring that the Chiefs of Police violated HRS § 52D-5 by using HPD and MPD officers within the County of Hawaiʻi; (2) preliminary and permanent injunctions prohibiting the Chiefs of Police from violating HRS § 52D-5; (3) a temporary restraining order;[7] and (4) attorney's fees pursuant to the private attorney general doctrine.

Chief Ballard filed a motion to dismiss Flores's complaint (Motion to Dismiss) pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 12(b)(6).[8] Chief Ballard argued that Flores's complaint failed to state a claim upon which relief could be granted because there is no private right of action for which a plaintiff can seek a remedy for an alleged violation of HRS § 52D-5. Citing to Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc., 110 Hawaiʻi 302, 312, 132 P.3d 1213, 1223 (2006), as corrected (Apr. 25, 2006), Chief Ballard

---

[7]     Flores also filed an ex parte motion seeking a temporary restraining order enjoining HPD and MPD officers from assisting HCPD with "keeping roadways clear for the movement of construction equipment and vehicles on Hawaiʻi Island, and any police activities related thereto, including, but not limited to, effectuating arrests, traffic control, [and] transportation of detainees" in the area of the protests. (Internal quotation marks omitted.)

[8]     HRCP Rule 12(b) (2000) provides in relevant part "that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted."

contended that HRS § 52D-5 does not create a private right of action based on the

> following factors: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether a private right of action would be "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."

Applying these factors to HRS § 52D-5, Chief Ballard argued that (1) the statute was enacted to protect local jurisdictions from outside investigators and to assure cooperation between the chiefs of police; (2) the statute expresses no legislative intent to create a private remedy; and (3) a private remedy would be inconsistent with the purpose of the statutory scheme. Chief Ballard also argued that Flores's claim was moot because HPD officers were no longer on the Island of Hawaiʻi for any purpose relating to the TMT.

Chief Faaumu joined in Chief Ballard's Motion to Dismiss. Chief Faaumu agreed with Chief Ballard's arguments that there is no private right of action for alleged violations of HRS § 52D-5 and that the case was moot.

Chief Ferreira also joined in Chief Ballard's Motion to Dismiss and agreed that there is no private right of action for alleged violations of HRS § 52D-5. Chief Ferreira took no

8

position on whether the case was moot because this argument did not apply to him as Chief of HCPD.

On September 12, 2019, Flores filed a memorandum in opposition to Chief Ballard's Motion to Dismiss (Opposition). Flores argued that (1) HRS § 52D-5 creates an implied private right of action; and (2) his case was not moot because exceptions to the mootness doctrine applied. Without seeking leave of the circuit court, Flores attached to his Opposition a declaration by Flores, a declaration by Flores's counsel, and "Exhibits" (1) through (8).[9]

On September 17, 2019, Chief Ballard filed a reply memorandum in which she argued, inter alia, that (1) the declarations and exhibits attached to Flores's Opposition were improper and should be ignored; (2) HRS § 52D-5 was not implicated by HPD and MPD officers responding to Chief Ferreira's request for assistance; and (3) the intergovernmental assignment of police officers from HPD and MPD to HCPD was authorized by HRS § 78-27.

On September 18, 2019, Flores filed an ex parte motion for leave to file a supplemental declaration and three additional exhibits in support of Flores's Opposition. A

---

[9]    The exhibits are various news articles documenting assistance by HPD and MPD on Mauna Kea and letters and emails from Flores's counsel to the respective county counsel requesting assurance that HPD and MPD would not assist HCPD with regard to the TMT operations again.

9

declaration by Flores's counsel and "Proposed Exhibits" (9) through (11) were appended to the ex parte motion (Supplemental Filing).

On September 19, 2019, the circuit court granted Flores's ex parte motion and ordered that the declaration of counsel and Proposed Exhibits (9) through (11) be included in Flores's Opposition.[10]

The circuit court heard Chief Ballard's Motion to Dismiss and Chief Faaumu's and Chief Ferreira's joinders on September 20, 2019. Regarding Chief Ballard's claim that the Inter-Departmental Agreements were authorized by HRS § 78-27, Flores argued that HRS § 78-27 did not provide legal authority for HPD and MPD to exercise police powers on the Island of Hawaiʻi. After hearing argument, the circuit court made an oral ruling:

> The Court notes that the Court has reviewed the legislative history of [HRS § 52D-5] . . . .
> The Court views as the purpose is [sic] to provide continuity to police investigations from one county jurisdiction to another and to also protect the local control and assure its cooperation through the provisions of notification to a county chief of police when investigations are to be pursued within this jurisdiction or a jurisdiction.

---

[10]     In the declaration, Flores's counsel attested that he required further discovery and was still waiting for the Chiefs of Police to produce documents. Despite the fact that Flores sought leave to supplement his Opposition with matters outside the pleadings, Flores claimed "this case is not ripe for summary judgment because discovery is outstanding."
     Exhibits (9) through (11) are the responses to Flores's first request for production of documents by Chief Ferreira, Chief Faaumu, and Chief Ballard, respectively, including copies of the Inter-Departmental Agreements.

> So the Court concludes that <u>there is no private right of action pursuant to HRS Section 52D-5</u>. Therefore, the motion to dismiss is granted.

(Emphasis added.)

On November 12, 2019, the circuit court entered the Order Granting Motion to Dismiss, citing as the reason for the decision that "there is no private right of action pursuant to [HRS] § 52D-5."[11]  The circuit court also entered Judgment in favor of the Chiefs of Police and against Flores on November 12, 2019.

C.  **ICA Proceedings**

1.  **Opening Brief**

On December 6, 2019, Flores filed a notice of appeal. Flores argued that the circuit court erred by concluding that HRS § 52D-5 does not provide a private right of action.[12]

First, Flores argued that the language of HRS § 52D-5 evinces a legislative intent to include a private right of action.  Flores reasoned that because the Legislature included a "territorial limit[]" on where police officers can exercise their police powers, HRS § 52D-5 creates a right entitling Flores to be "free from off island county police officers

---

[11]    The circuit court never ruled on Chief Ballard's objections to the two declarations and eight exhibits attached to Flores's Opposition.

[12]    Although Flores's opening brief stated four points of error, each alleged error is actually an argument for why HRS § 52D-5 includes a private right of action.

exercising police powers on Hawaiʻi Island." Flores also intimated that a police officer making an arrest outside of the officer's home county violates the arrestee's Fourth Amendment rights. Flores further asserted that when enacting HRS § 52D-5, the Legislature included the "requirement of hometown origination to avert the evil of off island county police invasion" because "off island police" are more likely to violate an individual's rights. According to Flores, the Legislature "did not envision or intend for off island police to go to another jurisdiction" except to investigate a crime related to "their home turf."

Second, Flores argued that HRS § 52D-5 implicitly contains a private right of action in order to allow judicial review of "illegitimate police activity beyond a county police's home territory." Flores contended that if the Legislature actually intended to preclude a private right of action, and thus escape judicial review, "that preclusion violates the separation of powers doctrine." Flores maintained that because the Hawaiʻi Attorney General acquiesced and supported the actions of the Chiefs of Police, which violated HRS § 52D-5, there must be an implied right of action available to facilitate judicial review of police activity outside an officer's home jurisdiction. Flores argued that his complaint seeking

12

declaratory relief was consistent with the private attorney general doctrine, which permits a private citizen to collect attorney's fees when enforcing an alleged violation of state law where the government has failed to do so.

Third, Flores argued that HRS § 52D-5 must include a private right of action because it lacks an explicit penalty or any other mechanism for enforcement.  Flores maintained that Hawaiʻi case law precludes a private right of action for tort damages only in statutes which already contain enforcement or penalty mechanisms, which HRS § 52D-5 does not.  Flores also contended that it is an open question whether declaratory and injunctive relief are available when a statute contains an enforcement mechanism.

## 2. Answering Brief

The Chiefs of Police filed an answering brief on August 5, 2020.

First, the Chiefs of Police argued that the mutual aid provided by HPD and MPD to Chief Ferreira was authorized by HRS § 78-27, rather than HRS § 52D-5 which is Hawaiʻi's "hot [or fresh] pursuit" statute.  The Chiefs of Police contended that HRS § 78-27 is Hawaiʻi's "mutual aid" statute, which allows for mutual aid — including mutual aid for police services — so long as an oral or written agreement exists between the sending and

13

receiving agencies.  The Chiefs of Police explained that in this case, Chief Ferreira entered into written agreements with Chief Ballard and Chief Faaumu for the inter-departmental assignment of police officers.[13]

Second, the Chiefs of Police argued that because HRS § 78-27 authorized the mutual aid that Flores challenged, the ICA need not reach the issue of whether the mutual aid was authorized under HRS § 52D-5.  However, the Chiefs of Police maintained that the circuit court decision could also be affirmed on the basis of HRS § 52D-5 because (1) Flores was not arrested and thus could not challenge whether HPD and MPD had legal authority to act within the County of Hawai‘i; (2) HRS § 52D-5 does not create a private right of action;[14] and (3) Chief Ferreira's power to deputize HPD and MPD officers is

---

[13]    The Chiefs of Police also cited HRS § 127A-12(c)(2) (Supp. 2017) as a statutory basis for mutual aid during emergencies.  HRS § 127A-12(c)(2) provides in relevant part:

> (c)  The mayor may exercise the following powers pertaining to emergency management:
>
> . . . .
>
> (2)    Sponsor and develop mutual aid plans and agreements for emergency management between one or more counties, and other governmental, private-sector, or nonprofit organizations, for the furnishing or exchange of . . . police services . . . and other . . . personnel[] and services as may be needed.

[14]    Chief Ballard repeated the same arguments made before the circuit court for why HRS § 52D-5 does not create a private right of action.

14

not limited by HRS § 52D-5, because the Charter of the County of Hawai'i (CCH) § 7-2.4(e) grants Chief Ferreira "such other powers, duties, and functions as may be . . . provided by law."

### 3. Reply Brief

Flores filed a reply brief on August 31, 2020. In his reply brief, Flores rejected the Chiefs of Police's claim that HRS § 78-27 authorized mutual aid by HPD and MPD, and insisted that "off island police officers" may only use their police powers in other counties when the requirements of HRS § 52D-5 are satisfied. Flores argued that, pursuant to HRS § 78-27(b), employees on a temporary assignment are "entitled to the same rights and benefits as any other employee of the sending agency," but that the exercise of police powers is neither a right nor a benefit.

Flores insisted that HRS § 127A-12 was inapplicable because the Chiefs of Police "conspired to violate HRS § 52D-5" before any emergency was declared on Mauna Kea. Additionally, Flores argued that he satisfied the requirements of standing for declaratory relief, notwithstanding the fact that he himself was not arrested. Finally, Flores reiterated the arguments made in his opening brief that HRS § 52D-5 creates a private right of action.

15

### 4. Amicus Curiae Brief

The International Municipal Lawyers Association, Inc. (the IMLA)[15] filed a motion for leave to file an amicus curiae brief in support of the Chiefs of Police, which the ICA granted.

The IMLA explained that mutual aid by law enforcement is an essential form of intergovernmental cooperation that is common both in Hawaiʻi[16] and throughout the United States. According to the IMLA, mutual aid "enables jurisdictions to access additional resources when the need arises . . . [and] to effectively utilize all available resources, coordinate planning, and minimize conflict in order to ensure a timely and efficient response."  The IMLA noted that the sharing of resources within Hawaiʻi is especially important because people and resources are not evenly distributed throughout the state[17]

---

[15]    The IMLA described itself and its interest in this case as follows:

> The [IMLA] is a non-profit, professional organization that has been an advocate and resource for local government lawyers since 1935.  IMLA serves as an international clearinghouse of legal information and cooperation on municipal legal matters.  IMLA has a significant interest in the issue presented here, which is the validity of mutual aid agreements between and among local and municipal governments, including agreements relating to the sharing of law enforcement resources.

[16]    The IMLA cited as recent examples of mutual aid in Hawaiʻi the disaster responses after Hurricane Iniki in 1992 and after the eruption of Kilauea in 2018.

[17]    One example of this uneven distribution of resources is that Honolulu County covers approximately 600 square miles, but has four times the number

and help from neighboring states cannot arrive in a timely fashion.

Second, the IMLA argued that mutual aid is authorized by HRS § 78-27, which provides for temporary assignment of personnel between state agencies, and by HRS § 127A, which provides for rendering of mutual aid during an emergency. The IMLA noted that the Legislature enacted HRS chapter 127A to "ensure that the preparations of this State will be adequate" to address the "existing and increasing possibility of the occurrence of disasters or emergencies." Specifically, HRS § 127A-12(c)(2) permits county mayors to "'[s]ponsor and develop mutual aid plans and agreements for emergency management between one or more counties' for the provision of various services, including 'police services' and 'personnel necessary to provide or conduct those services.'" (Alteration in original.) The IMLA observed that even absent specific statutory authority, courts in other jurisdictions have upheld intergovernmental agreements for mutual aid under general principles of contract law.

Third, the IMLA maintained that HRS § 52D-5, Hawaiʻi's hot- or fresh-pursuit statute, does not limit the ability of

_____

of police officers as the County of Hawaiʻi, which covers more than 4,000 square miles.

17

municipalities to enter into law enforcement mutual aid agreements.  The IMLA suggested distinguishing between a mutual-aid statute, which benefits the receiving agency, and a hot-pursuit statute which benefits the sending agency.  According to the IMLA, "one is not a substitute for the other, nor does one preclude the other."  Thus, the IMLA urged the ICA to affirm the circuit court and send a "clear signal . . . that mutual aid agreements like the one at issue here are broadly authorized under HRS § 78-27."

    **5.    ICA's Published Opinion**

The ICA published its opinion on January 27, 2021.  Flores v. Ballard, 149 Hawai'i 81, 482 P.3d 544 (App. 2021).  The ICA affirmed the circuit court's judgment on other grounds.[18]  Id. at 92, 482 P.3d at 555.

As relevant here, the ICA considered whether HRS § 52D-5 was implicated by HPD and MPD officers assisting Chief Ferreira on Mauna Kea.  Id. at 88-89, 482 P.3d at 551-52.  The ICA reasoned that HRS § 52D-5 applies when a sending police department seeks permission to exercise police authority in

---

[18]    The ICA cited Tauese v. State, Dep't of Labor & Indus. Relations, 113 Hawai'i 1, 15 n.6, 147 P.3d 785, 799 n.6 (2006), for the proposition that "the result will not be disturbed on the ground that the circuit court gave the wrong reason for its ruling."  Flores v. Ballard, 149 Hawai'i 81, 88, 482 P.3d 544, 551 (App. 2021).  The ICA noted that "[i]n our de novo review we 'may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it.'"  Id. (citation omitted).

another county "in the pursuit of any investigation commenced within" the sending agency's home county.  Id. at 89, 482 P.3d at 552.  But here, the ICA noted, it was Chief Ferreira who requested officers from HPD and MPD "to assist HCPD in handling matters on Hawaiʻi Island that strained HCPD's resources."  Id. According to the ICA, "[n]either Chief Ballard nor Chief Faaumu purported to exercise police authority in the County of Hawaiʻi 'in the pursuit of any investigation commenced within' the City and County of Honolulu or the County of Maui."  Id. (quoting HRS § 52D-5).  Thus, the ICA concluded that HRS § 52D-5 was neither implicated nor violated[19] and "[i]t was thus appropriate for the circuit court to dismiss Flores's complaint based upon the alleged violation of HRS § 52D-5 by the Chiefs of Police."  Id.

Second, the ICA considered whether there was other statutory authority for HPD and MPD to support HCPD's TMT-related operations.  Id. at 89-91, 482 P.3d at 552-54. Specifically, the ICA considered whether the Inter-Departmental Agreements were authorized by HRS § 78-27, as Chief Ballard argued.  Id.  The ICA pointed out that HRS § 78-27(d) provides parameters for the type of agreement:

> An agreement consistent with this section and policies of the employer shall be made between the sending and receiving agencies on matters relating to the assignment or

---

[19]    The ICA did not reach the issue of whether HRS § 52D-5 creates a private right of action because it concluded that the statute was not violated.  Id. at 89, 482 P.3d at 552.

> exchange, including but not limited to <u>supervision of duties, costs of salary and benefits, and travel and transportation expenses</u>; provided that the agreement shall not diminish any rights or benefits to which an employee of a governmental unit of this State is entitled under this section.

<u>Id.</u> at 90, 482 P.3d at 553.  The ICA noted that HRS § 78-27 contemplates that county police departments could be both "sending" and "receiving" agencies, because "Act 253 of the 2000 legislative session, which resulted in the enactment of HRS § 78-27, mentions 'police' three times."[20]  <u>Id.</u>  The ICA reasoned that HRS § 78-27 "protects the temporarily assigned police officers' civil service, collective bargaining, workers' compensation, and other employment rights and benefits during the temporary assignment."[21]  <u>Id.</u>  Thus, the ICA concluded that

---

[20]    The ICA pointed out that "[s]ection 74 refers to workers compensation benefits for police officers.  Section 96 refers to a collective bargaining unit for police officers.  Section 100 refers to resolution of labor grievances involving the police officers' collective bargaining unit.  2000 Haw. Sess. Laws Act 253."  <u>Id.</u> at 90 n.8, 482 P.3d at 553 n.8.

[21]    The ICA also noted that the Inter-Departmental Agreements contained the following provisions consistent with HRS § 78-27(d):

> 3.    It is the understanding of the parties that the State Attorney General's Office has agreed to pay for and/or reimburse the Sending Agency for the costs, any portion of the costs, overtime, benefits, and travel and transportation expenses on behalf of the Receiving Agency. However, HCPD shall ultimately be responsible for said costs and expenses should the State Attorney General's Office fail to pay for and/or reimburse the Sending Agency for any expenditures related to the TMT Project and any other assignment as deemed necessary by the HCPD Chief of Police or his designee with the approval of [HPD/MPD]. Such expenses may be paid for or reimbursed to the [HPD/MPD].

> 4.    The [HPD/MPD] personnel are to carry out and observe all lawful instructions and orders issued by the

20

HRS § 78-27 authorized the Inter-Departmental Agreements for the temporary assignment of HPD and MPD officers to support HCPD. Id. at 91, 482 P.3d at 554.

Third, the ICA considered whether HPD and MPD officers were authorized to exercise police powers within the County of Hawai'i — which was the conduct specifically challenged by Flores in his lawsuit. Id. at 91-92, 482 P.3d at 554-55. The Delegations signed by Chief Ferreira and attached to each of the Inter-Departmental Agreements state:

> Under the authority of the Chief of Police, of Hawai'i County Police Department, the following officers of the [HPD/MPD] (please see attached list), are granted full police officer power, privilege and authority, under HRS [§] 52D-5. The purpose of this delegation of authority, while assigned to Hawai'i [C]ounty will be to support and manage police operations in conjunction with the Thirty Meter Telescope project and any other assignment as deemed necessary by the Hawai'i County Police Chief or his designee. This delegation of Police authority shall be effective from July 16, 2019 until the end of police

---

> appointing authority or designee relative to employment.
>
> 5.    The [HPD/MPD] personnel shall perform all of the work under the supervision of an immediate supervisor in the Sending Agency or any other person in the Receiving Agency who has the authority to supervise the activities.
>
> . . . .
>
> 9.    This employment will be subject to all laws, ordinances, and rules and regulations having the effect of law governing employment of public employees; and
>
> 10.    Any and all collective bargaining agreements pertinent to [HPD/MPD] personnel's regular positions with the [HPD/MPD] shall apply, including but not limited to salary.

Id. at 90-91, 482 P.3d at 553-54.

21

operations for this project as deemed necessary by the
Hawaiʻi County Chief of Police.

Id. at 91, 482 P.3d at 554  (emphasis added).  The ICA described

the Delegations' citation to HRS § 52D-5 as "inapt," because

that statute "does not apply to the circumstances described by

the Delegations."  Id.

However, the ICA surmised that Chief Ferreira was

authorized to delegate police powers to HPD and MPD officers by

other statutes: HRS §§ 52D-3,[22] 52D-6,[23] and Article VII, Chapter

2[24] of the CCH (CCH Article VII).  Id. at 91-92, 482 P.3d at 554-

---

[22]   HRS § 52D-3 (2012) provides: "The chief of police shall have the powers
and duties as prescribed by law, the respective county charter, and as
provided by this chapter."

[23]   HRS § 52D-6 (2012) provides: "The chief of police may appoint officers
and other employees under such rules and at such salaries as are authorized
by law. Probationary appointment, suspension, and dismissal of officers and
employees of the police department shall be as authorized by law."  (Emphasis
added.)

[24]   Article VII, Chapter 2 of the CCH (2018) provides, in relevant part:

> Section 7-2.1. Organization.
>
> There shall be a police department consisting of a
> police commission, a chief of police, a deputy chief of
> police, and the necessary staff.
>
> . . . .
>
> Section 7-2.4. Powers, Duties, and Functions of the Chief
> of Police.
>
> The chief of police shall be the administrative head
> of the police department and shall:
>
> (a)   Be responsible for the preservation of the
>       public peace, prevention of crime, detection
>       and arrest of offenders against the law,
>       protection of the rights of persons and
>       property, and enforcement and prevention of
>       violations of all laws of the state and

Specifically, the ICA reasoned that (1) HRS § 52D-3 grants each chief of police "the powers and duties as prescribed by law, the respective county charter, and as provided by this chapter[;]" (2) CCH Article VII § 7-2.4(b) empowers the chief of HCPD to "[t]rain, equip, maintain, and supervise the force of police officers[;]" and (3) HRS § 52D-6 allows the chief of police to "appoint officers . . . under such rules . . . as are authorized by law." Id.

The ICA described the relationship between HRS § 78-27 and the statutes authorizing Chief Ferreira's delegation of authority as follows:

> HRS § 78-27 is a law that authorizes Chief Ferreira to temporarily receive police officers from another county's police department to support HCPD operations on Hawaiʻi Island. HRS § 78-27 also authorizes Chief Ballard and Chief Faaumu to temporarily assign police officers from their respective departments to another county's police department. The Hawaiʻi County Charter and HRS Chapter 52D authorize Chief Ferreira to appoint and supervise police officers in the County of Hawaiʻi, including those temporarily assigned to Hawaiʻi Island from Honolulu and Maui counties.

---

                          ordinances of the county and all regulations made in accordance therewith.

      (b)   <u>Train, equip, maintain, and supervise the force of police officers</u> and employees.

      . . . .

      (e)   <u>Have such other powers, duties, and functions as</u> may be required by the police commission or <u>provided by law.</u>

(Emphasis added.)

Id. at 92, 482 P.3d at 555. Thus, the ICA held that "[a]pplying the plain language of HRS §§ 52D-3, 52D-6, and 78-27, and Chapter 2 of the Hawai'i County Charter, in pari materia . . . execution and performance of the Agreements and the Delegations by the Chiefs of Police in this case was authorized by law." Id.

Accordingly, the ICA affirmed the circuit court's November 12, 2019 Order Granting Motion to Dismiss and Judgment in favor of the Chiefs of Police. Id. The ICA entered its corresponding Judgment on Appeal on February 24, 2021. Flores filed an application for writ of certiorari on April 22, 2021.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

> A circuit court order granting a motion to dismiss is reviewed de novo. Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 401, 391 P.3d 1, 8 (2017). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." In re Estate of Rogers, 103 Hawai'i 275, 280, 81 P.3d 1190, 1195 (2003) (quoting Blair v. Ing, 95 Hawai'i 247, 252, 21 P.3d 452, 457 (2001)). Our review is "strictly limited to the allegations of the complaint," which we view in the light most favorable to the plaintiff and deem to be true. Id. at 280-81, 81 P.3d at 1195-96. (quoting Blair, 95 Hawai'i at 252, 21 P.3d at 457). However, "the court is not required to accept conclusory allegations on the legal effect of the events alleged." Hungate, 139 Hawai'i at 401, 391 P.3d at 8.

Civ. Beat Law Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu, 144 Hawai'i 466, 474, 445 P.3d 47, 55 (2019).

24

**B.    Summary Judgment**

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

HRCP Rule 12(b).

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.'" Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citing HRCP Rule 56(c) (1990)) (citation omitted).

**C.    Statutory Interpretation**

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Nakamoto v. Kawauchi, 142 Hawai'i 259, 268, 418 P.3d 600, 609 (2018).

### III. DISCUSSION

On certiorari, Flores argues that the ICA erred by (1) ignoring the plain language of HRS § 52D-5 and relying on

HRS §§ 52D-3, 52D-5, 78-27, and CCH Article VII to "effectively render[] HRS § 52D-5 meaningless"; (2) holding that HRS § 52D-5 did not apply to the facts alleged in Flores's complaint, despite the fact that the Delegations cited as authority HRS § 52D-5; (3) concluding that HPD and MPD officers were properly deputized and acting under the authority of HCPD; and (4) failing to address whether Flores had a private right of action to challenge the violation of HRS § 52D-5. For the following reasons, Flores's arguments lack merit.

**A. There is no private right of action under HRS § 52D-5.**

The circuit correctly determined that, based on the legislative history and purpose of HRS § 52D-5, there is no private right of action under that statute. Here, Flores's complaint and the Chiefs of Police's Motion to Dismiss were filed pursuant to HRS § 52D-5, which states:

> Powers of chief of police outside own county. The chief of police of each county and any duly authorized subordinates shall have and may exercise all powers, privileges, and authority necessary to enforce the laws of the State, in a county other than the county in and for which the chief has been appointed, if:
> (1) The exercise of such power, privilege, and authority is required in the pursuit of any investigation commenced within the county in and for which the chief has been appointed; and
> (2) The concurrence of the chief of police of the county in which the power, privilege, and authority sought to be exercised is obtained.

26

In his Opposition, Flores contended that declaratory relief was available under HRS § 632-1[25] to determine (1) whether HRS § 52D-5 was applicable; and (2) if HRS § 52D-5 was applicable, whether the Chiefs of Police violated HRS § 52D-5. However, Flores cannot bring an action under HRS § 632-1 for

---

[25]     HRS § 632-1 (2016) provides:

> Jurisdiction; controversies subject to.  (a) In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought.  Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.
> (b) Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.  Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

declaratory relief unless HRS § 52D-5 provides for a private right of action.  See Alakaʻi Na Keiki, Inc. v. Matayoshi, 127 Hawaiʻi 263, 285, 277 P.3d 988, 1010 (2012) (citing Cnty. of Haw. v. Ala Loop Homeowners, 123 Hawaiʻi 391, 407 n.20, 235 P.3d 1103, 1119 n.20 (2010)) ("In order for a party to sue for enforcement under HRS § 632-1, HRS chapter 103F must provide for an express or implied private right of action.").  Thus, we must determine whether HRS § 52D-5 creates a private right of action.

This court has noted that "[r]equirements imposed by statutes do not necessarily give rise to a private right of action."  Hungate, 139 Hawaiʻi at 405, 391 P.3d at 12 (citing Cannon v. Univ. of Chi., 441 U.S. 677, 688 (1979)).  This court has stated:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant.  First, is the plaintiff one of the class for whose [e]special benefit the statute was enacted; . . . that is, does the statute create a . . . right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

Whitey's Boat Cruises, 110 Hawaiʻi at 312, 132 P.3d at 1223 (quoting Reliable Collection Agency, Ltd. v. Cole, 59 Haw. 503, 507, 584 P.2d 107, 109 (1978)) (alterations in original).  Furthermore, "[w]hile each factor is relevant, 'the key factor' is whether the legislature 'intended to provide the plaintiff

28

with a private right of action.'"  Hungate, 139 Hawaiʻi at 406,

391 P.3d at 13 (quoting Whitey's Boat Cruises, 110 Hawaiʻi at 313

n.20, 132 P.3d at 1224 n.20).

1.    **Flores is not part of the class for whose especial benefit the statute was enacted.**

As the Chiefs of Police pointed out in their Motion to

Dismiss, the legislative history of HRS § 52D-5 demonstrates

that the statute was not enacted to allow a private citizen to

bring a claim for a violation of the statute.

The 1971 House Journal Standing Committee Report

provides that:

> The purpose of this bill is to add a new section to Chapter 52, Hawaii Revised States [sic], which would provide continuity to police investigations from one county jurisdiction to another.  The bill allows enforcement powers to police chiefs outside their own county if it is required in pursuit of an investigation which commenced in their county and also if the concurrence of the chief in whose county the power is sought to be exercised is first obtained.

H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990.

The Joint Select Committee of Kauaʻi, Maui, Oʻahu, and

Hawaiʻi Representatives noted that:

> The purpose of this bill is to add a new section to provide continuity to police investigations from one jurisdictional region to another.
>
> . . . .
>
> This new section will continue to protect local control and assure cooperation through the provisions of notification to a county chief of police when investigations are to be pursued within his jurisdiction. The provisions for crossing county lines is contingent upon the fact the investigation must commence in the home county

> of the investigator.  It also assures protection of local jurisdictions from encroachment by outside investigators.

H. Stand. Comm. Rep. No. 608, in 1971 House Journal, at 947-48.

The purpose of enacting HRS § 52D-5 was therefore to "provide continuity to police investigations from one county jurisdiction to another."  H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990.  The legislative history of HRS § 52D-5 does not contemplate a private citizen bringing a claim against the Chiefs of Police for a violation of the statute.  See H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990. Instead, the legislative history discusses "enforcement powers" of the police chiefs outside of their own jurisdictions.  H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990.  Thus, the police chiefs, and not a private citizen such as Flores, are part of the class for whose especial benefit HRS § 52D-5 was enacted.

**2.    There is no indication of legislative intent to create or deny a private right of action.**

The legislative history and text of HRS § 52D-5 do not indicate any explicit or implicit intent that the statute provides for a private right of action.  A private right of action is not mentioned anywhere in the legislative history or text of HRS § 52D-5.  See H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990; see also H. Stand. Comm. Rep. No. 608, in 1971 House Journal, at 947-48; HRS § 52D-5.  Thus, there is no

indication of an explicit intent to create a private right of action under HRS § 52D-5.

Furthermore, there is no indication of an implicit intent to create a private right of action. HRS § 52D-5 and its legislative history are silent regarding whether the statute was intended to create a private right of action. See HRS § 52D-5; see also H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990. Although "legislative silence alone is not dispositive," strong evidence is necessary to imply a private right of action. Hungate, 139 Hawaiʻi at 406, 391 P.3d at 13 (citing 1A C.J.S. Action § 62 (2016)). Flores has not shown strong evidence that the Legislature intended to create a private right of action in HRS § 52D-5.[26] Therefore, because there does not appear to be an implicit intent to create a private right of action under HRS § 52D-5, we decline to infer a private right of action under that statute. See Hungate, 139 Hawaii at 406, 391 P.3d at 13 (quoting Touche Ross & Co v. Redington, 442 U.S. 560, 571 (1979)) ("[I]mplying a private right of action on the basis of [legislative] silence is a hazardous enterprise, at best." (alterations in original)).

---

[26]    Flores contended that "by prohibiting the unauthorized and unlawful exercise of police powers outside an officer's jurisdiction, [HRS §] 52D-5 implicitly created a private right of action to seek declaratory relief." Additionally, Flores argued that "[i]f the legislature in fact intended to preclude judicial review, then that preclusion violates the separation of powers doctrine."

3.   **It is inconsistent with the underlying purposes of the legislative scheme to imply a private right of action.**

As discussed above, the purpose of HRS § 52D-5 is to "provide continuity to police investigations from one county jurisdiction to another."  H. Stand. Comm. Rep. No. 703, in 1971 House Journal, at 990; see also H. Stand. Comm. Rep. No. 608, in 1971 House Journal, at 947-48; HRS § 52D-5.  In other words, the Chiefs of Police correctly pointed out in their Motion to Dismiss that "[t]he underlying purpose of [HRS] § 52D-5 is to ensure cooperative, mutual aid and assistance between the counties' chiefs of police to conduct investigations in each other's respective jurisdictions."  Implying a private right of action under HRS § 52D-5 would be inconsistent with the statute's legislative scheme because allowing a private individual to sue police chiefs would interfere with the ability of police from different jurisdictions to cooperate and provide continuity to police investigations.  Thus, implying a private right of action would not be consistent with the underlying purposes of HRS § 52D-5.

Flores filed his complaint seeking declaratory relief pursuant to HRS § 52D-5.  However, the legislative history of HRS § 52D-5 demonstrates that the statute does not provide Flores with a private right of action.  In turn, the circuit court properly granted the Chiefs of Police's Motion to Dismiss

32

because Flores was not entitled to declaratory relief under
HRS § 632-1.

**B.   The ICA correctly determined that mutual aid is permitted.**

Although the ICA could have affirmed the circuit
court's Order Granting Motion to Dismiss because HRS § 52D-5
does not create a private right of action, the ICA correctly
determined that mutual aid between different counties is
permitted.  According to Flores, a police officer may only
exercise police powers in another county when both prongs of HRS
§ 52D-5 are satisfied, meaning that (1) the officer is pursuing
an investigation originating in the "sending" jurisdiction and
(2) the chief of police of the "receiving" jurisdiction
consents.

However, nothing in the plain language of HRS § 52D-5
indicates that the statute identifies the only scenario in which
a police officer may exercise police authority in another
jurisdiction.  Rather, HRS § 52D-5 describes a specific scenario
in which it is permissible for a chief of police or an
authorized subordinate to exercise the authority of the sending
county in another county.  See HRS § 52D-5.

In addition, Flores's interpretation ignores the
practical need for mutual aid – a necessity that the Legislature
recognized and provided for in other statutes.  See HRS § 78-27

(providing for the temporary inter-governmental assignment of employees by agreement); HRS § 127A-12[27] (vesting county mayors with authority to "develop mutual aid plans and agreements for emergency management" between counties for the provision of necessary services, including police services).  Furthermore, as the IMLA pointed out, mutual aid is an important tool to enable state agencies "to access additional resources when the need arises[]" and helps facilitate a timely response to emergencies.  Thus, Flores's interpretation that HRS § 52D-5 limits all out-of-county police action and mutual aid is without merit, and the ICA correctly determined that mutual aid between police officers of different counties is permitted under Hawaiʻi law.

### IV.   CONCLUSION

The legislative history of HRS § 52D-5, which was the basis of Flores's complaint, demonstrates that the statute does not provide for a private right of action.  Thus, the circuit court properly dismissed Flores's complaint.  In addition, as held by the ICA, mutual aid between police departments of different counties is permitted under Hawaiʻi law.

---

[27]    The Legislature described the policy and purpose of Chapter 127A Emergency Management as: "It is the intent of the legislature to provide for and confer comprehensive powers for the purposes stated herein.  This chapter shall be liberally construed to effectuate its purposes[.]"  HRS § 127A-1(c) (Supp. 2019).

Accordingly, we affirm the ICA's February 24, 2021 Judgment on Appeal, which affirmed the circuit court's November 12, 2019 Order Granting Motion to Dismiss.

<table>
<tr><td>Peter S.R. Olson<br>for petitioner E. Kalani Flores</td><td>/s/ Mark E. Recktenwald</td></tr>
<tr><td></td><td>/s/ Paula A. Nakayama</td></tr>
<tr><td>Robert M. Kohn<br>(Ernest H. Nomura and<br>Nicolette Winter with him<br>on the briefs) for<br>respondent Arthur Logan in his<br>capacity as Chief of Police of<br>the City and County<br>of Honolulu</td><td>/s/ Sabrina S. McKenna<br><br>/s/ Michael D. Wilson<br><br>/s/ Todd W. Eddins</td></tr>
</table>



Peter A. Hanano
for respondent John Pelletier
in his capacity as Chief of
Police of Maui County

Lerisa L. Heroldt
(Laureen L. Martin with her
on the briefs) for respondent
Paul Ferreira in his capacity as
the Chief of Police of the
County of Hawaiʻi

Alan D. Cohn\* (Richard F.
Nakamura, Steven L. Goto and
Jason E. Meade\*, with him on the
briefs) for amicus curiae
International Municipal Lawyers
Association, Inc.

Kimberly T. Guidry and
Kalikoʻonālani D. Fernandes
for amicus curiae State of
Hawaiʻi

\*admitted pro hac vice

35